Thank you very much, Counsel.  A little bit of a traffic jam there this morning. May it please the Court, Michael Powell on behalf of the defendant appellant, Miguel Jacinto-Sotelo. What we're here today is to review the district court's denial of a motion to suppress in the case that there was no warrant. And there's two actual questions. One was, was there a problem caused to begin with? And the second question was, was there a valid consent based on the record presented by the government? Now, the way ---- What's the standard of review in this case? De novo, Your Honor. It's de novo for what? For whether or not he was correct on the law in denying a motion to suppress. De novo for the application of the law, correct? Yes, Your Honor. But we take the facts as detailed by the underlying court. Yes, Your Honor, unless they're clearly erroneous. Right. But, of course, how you analyze the facts in light of the law is probably actually a legal question. And, of course, all suppression issues are fact-driven. I mean, and that's really the idea we're here. That's why it's very difficult in a lot of cases to make an analogy unless you can find another case that's identical to this one. But we've analyzed it in this particular respect. What we have is, we believe, is the analogy is to an anticipatory warrant. And that requires a triggering event before probable cause is established or you could execute a warrant. And why we say this is because the way the facts develops is this. There's a gentleman in county jail that was arrested for a drug offense. The local task force went down there, got him out, signed him up as a C.I. on August the 3rd. He was supposed to contact him every day. He didn't. Finally, the officers get a little irritated. They call him up on the phone. He tells somebody to tell the officers he's not there. The officer goes to the house and says, look, start calling now. And so the whole incident develops in basically just one day. So before the C.I., when they let him out, says, I know this guy named Miguel. He describes a house and a car. None of the people on the task force had ever heard of Miguel before. They had no idea anybody by that name had been dealing any kind of drugs at all. So on the day in question, we have some phone calls that the officers overhear one side of. They were being, at least the first one wasn't recorded. Later, they were recorded, but nobody had access. The officers didn't have access to both sides of the transcript at the time. So they hear this. There's supposedly a deal set up. Miguel was supposed to drive to a 7-Eleven or someplace to meet the C.I. to make this drug exchange. Well, they watch him come out of his house after the phone call. He doesn't put anything in the car. They watch him drive down the street. He doesn't commit any traffic offenses. He isn't doing counter-surveillance. But then when he drives by the place where the drug sale was arranged, and we call that the triggering event, he didn't stop. He kept going, made a turn, went down the end of the block and went in and bought a soda at a store after parking his car in the parking lot. So then the police officers. Well, they did, however, see him leave his house, right? Yes, sir. After the phone calls. They did. He was driving in a car. He said he'd be driving. Correct? That's correct. Okay. So the guy who was your defendant was the guy on the other end of the line had said, I'll be leaving my place. I'll be driving in this car. I'll come by this place for this handoff. And he just goes past. That's what happened, right? Well, yes, Your Honor. And the police knew the informant's name, right? They were standing right there with him. They had him in the car with them. And the CI told Miguel, told the police that Miguel was the drug supplier, correct? Some days before. And police corroborated that information given to them? They did not corroborate anything other than there was a physical address and a car in front of it that the CI told them about. That's it. And they monitored telephone calls confirming the information? One side. And then they see him leave his house in the car, and they said he'd be driving, and he goes past the place where he's going to handoff. And with that, there's no probable cause? No, Your Honor, because the trigger in the event didn't happen. Because what we have here is the state and the court speculated, well, he didn't stop there because he thought there was something wrong with that. But we don't get to speculate about probable cause. If they had given an anticipatory warrant, and I'm basing this on a U.S. Supreme Court case, and the triggering event is stopping and at least getting out of the car to meet the CI, then I would say, fine, let's go for it. But that didn't happen. The event that they're basing, they're saying that this drug deal was on because they didn't see who was on the other side of the phone. They don't know who's there. But the very fact is, if you look at this, and if you have enough probable cause to get an anticipatory warrant, that's always based on something specific happening. That would be stopping at the place where you're supposed to deliver the drugs. That didn't happen. What is the law that I have to apply to determine if it's probable cause? It's whether or not there's reasonable suspicion. There's a fair probability. Fair probability that contraband or evidence is located in this particular place, right? Sure. And a tip from a known informant is better than an anonymous one. Informant from the past is better than a new one. But detailed predictive information about future events corroborated by police observation is reliable, even if comes from an anonymous source. Sure, Judge. But what's the basis of the predictive event is that he's going to go, this is all the conversation, that he's going to go to this spot and get out. No, no. He gets in his car and he goes exactly to that spot. But he didn't stop. And then stops next door. No, it was not. No, Your Honor. Around the corner, whatever it was. Sure. Okay. I guess your principle of law is that unless he goes to the exact spot, not drive straight to it, buy it, but unless he stops right there, there's no probable cause. Exactly. What is the authority, the closest authority that supports that? Well, my closest authority is the Supreme Court case I cited based that was based on an anticipatory warrant. In other words, they could have gotten an anticipatory warrant, says this is what we know, if this is enough probable cause for a warrant, but the problem is that the triggering event still has to happen. Anticipatory warrants, they intercept some drugs, they say, okay, go deliver them, and once they get delivered or the person takes delivery of them, then we, you know, then execute the warrant. And I don't see any difference in this situation at all. Well, aren't the cases involving anticipatory warrants, which you cite, including the Grubb case, distinguishable? Because in this case, the officers had no need to rely on a triggering condition in order to establish probable cause. The totality of the circumstances, it could be argued, provided the officers with sufficient probable cause to search the automobile, notwithstanding the fact that appellant failed to stop at the designated meeting condition. No, Your Honor. I don't think you really can distinguish that because they have an unknown informant. It's a guy that they've never used before. They don't see you know, what's interesting to me is they watch him get out of his house. He doesn't put anything in the car. I mean, this all developed in a matter of an hour. And he comes down there. They only hear one side of the conversation. It's in Spanish. There's apparently a Spanish-speaking officer trying to tell him what it said. They don't know. All they know is, is that we have one side of this conversation, talking to someone, and then that person leaves. But does no other anything else indicate, other than the triggering event, which didn't happen, that there was actually any contraband in the car? And that's what the Supreme Court said. I think we understand. Did you want to move on? Yes, Your Honor. Just briefly on the consent. We have no content for the alleged consent. We have Officer Leyva, who never wrote a report, who when he testified could not remember what he asked him. He says, I asked him for consent. And he said that meant consent for everything, his car, his person. They searched him again. The problem there is, is that he wasn't in the car. They had already taken him out of the store. Now they had him surrounded. His car is already surrounded. They searched the car based on consent. But there's no content to that consent. There's no unequivocal or specific or anything to that. We don't even know what the substance of. What part of the record is confusing to you about what he was really asked? When the officer ---- I mean, have you got an excerpt record, a question or two? Because when I read the record, it didn't seem confusing at all to me what your client was asked. Well, Your Honor, we can't ---- what he was asked, do you consent? The officer said, I asked him one question. That applied to the consent of his person, the consent of the car, the search bolt. We don't know for what. He just says, do you consent? Is that unequivocal and specific? And can we tell what the scope of the search is? Well, that is your reading of what happened. Yes, Your Honor. I'm not sure that's my reading. That's why I wanted you to point to the exact question you're talking about, the questioning substance. Well, the question was to Officer Leyva, who testified he did not remember what he asked him. That's what he said. I don't remember specifically. And the reason he didn't is because he didn't write a report. And he was the only officer on the scene that spoke Spanish. The officer that wrote the report didn't put any details in this. And Officer Leyva says, I don't know what I asked him specifically. I know I asked him for consent in one question, and it was an all-purpose consent to search his person and the car also. I don't find that equivocal. If he can't even remember what he asked him, then how can you say that the response to that is unequivocal and specific? Thank you. Thank you. You have used your time. Good morning. May it please the Court. Elizabeth Olsen on behalf of the United States. Good morning. I'd like to address this issue of this analogy to an anticipatory search warrant, because I don't think that it applies in this case. The Grubbs case that Appellant cites is a case where the defendant had ordered some child pornography, and the triggering condition, it was a controlled delivery of the child pornography. Now, the probable cause that was needed was probable cause to believe that there was child pornography in the house, right? Now, the police were going to deliver the child pornography to the house, and as soon as that happens, that's the triggering condition after which there's probable cause that there's child pornography in the house. Now, this is a very different situation, because as the district court found, there was a series of monitored phone conversations over a course of at least a couple of hours. There were a total of eight telephone conversations, seven of which were recorded, in which the confidential informant with an officer standing next to him listening to his side of the conversation, negotiated the price, negotiated the delivery. They had a conversation where the confidential informant said, do you have it? Are we good? You know, is everything set? Is this a sure thing? Yes, it's a sure thing. We're ready to go. Then they're outside the defendant's house, calls him up. What are you doing? Oh, I'm just about to leave. I'm on my way. As soon as that phone call is concluded, they see the defendant, come out of the There's another conversation. Are you in your Jetta? Yes, I am. So now they know that the defendant is in the car, en route to the place. He has said that he has the drugs and is ready to go. All of that is probable cause. The officers testified that they saw the defendant's car drive slow down as if to turn into this. I think it was a 7-Eleven parking lot. There was a little confusion about that. And then went on. Now, the defendant, in one of the earlier conversations, they had changed the meeting location because the defendant was concerned that the first place that they were going, which was just a block away, was hot, that there was a lot of police activity, right? And what the officers knew is that there was an unmarked Sparks police car at the location. And they did sort of, they thought maybe the defendant had seen the car and that's why he went another block and turned into the market. But that turning into the 7-Eleven was not a necessary triggering condition because there was already probable cause through the whole course of the day's events. Just one more comment, because the defendant says over and over about how the police only heard one side of the conversation. I think we explained in our brief why that is. Because this whole event happened so quickly, the police weren't sure if it was going to be prosecuted in Federal court and in State court. And my understanding is that under Nevada law, you have to have consent from both parties to listen into both sides of a conversation. So anticipating that they might end up prosecuting this case in State court, they only listened to the confidential informant's side. But the district court made a finding about that. And he said that even though the officers were only listening to one side of the conversation, and this is a quote, it's clear that the sale of drugs are being discussed and the manner of delivery and the place of delivery and the quantity and the price and the circumstances are all being effectively corroborated. And that was clear just listening. You know, the district court did, after the fact, have the transcripts. And just looking at the confidential informant's side of the conversation, it was clear that that was all happening and so that that was all corroborated. As far as consent, you know, the unrebutted testimony is that the officers asked the defendant to consent, and he did, and they searched his car. There's the defendant in the district court, and also in his opening brief on appeal, he still tries to paint this picture of a very coercive environment with a swarm of police surrounding the defendant. The district court simply found that that's not what happened. There were only two officers who were actually talking to the defendant at any given time, one who was talking to the one who was translating, a Spanish-speaking officer, and at various points two other officers, but only two officers were with the defendant at any one time at the market. There were other officers present. Only one was in uniform. The rest were all in plainclothes. And they were – I mean, this was a – you know, there's a market and a parking lot. A couple of them were over by the defendant's car. A couple of them went inside the market to see if the defendant had stashed, you know, drugs in the market when he had gone in there. So this just simply wasn't – I mean, the district court found that there was no excessive – no excessive actions on the part of the defendant – on the part of the officers. They didn't have their guns drawn. They didn't have their guns displayed, their weapons displayed. And so he found that it was not a coercive environment. What did they need consent for? Again, because they weren't sure whether this was going to be prosecuted, the Nevada courts don't recognize automobile exception to the warrant requirement. So in the event – and they were clear that – I mean, they believed that they had probable cause to search the car, and I think the evidence makes clear that they did have probable cause to search the car. But had this been prosecuted under Nevada court, under Nevada law, they would have needed a warrant to search the car. But my question is if there was probable cause. If there was probable cause. The consent question really doesn't come into play at all. Exactly. Exactly. Unless the Court has other questions. Thank you very much. Thank you. The case just argued is submitted for decision. We'll hear the next case, which is United States v. Easterday.
judges: Schroeder, Smith, Fairbank